UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHERI BARRY, Plaintiff, v. MICHAEL J. ASTRUE, Commissioner of Social Security, Defendant. | Case No. EDCV 09-2008-JEM<br><br>MEMORANDUM OPINION AND ORDER AFFIRMING DECISION OF THE COMMISSIONER OF SOCIAL SECURITY |

**PROCEEDINGS**

On November 6, 2009, Cheri Barry ("Plaintiff" or "Claimant") filed a Complaint seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying Plaintiff's application for disability benefits under Title XVI of the Social Security Act. On May 7, 2010, the Commissioner filed an Answer to the Complaint. On July 9, 2010, the parties filed a Joint Stipulation ("JS") setting forth their positions and the issues in dispute.

Pursuant to 28 U.S.C. § 636(c), both parties consented to proceed before the undersigned Magistrate Judge. After reviewing the pleadings, transcripts, and administrative record ("AR"), the Court concludes that the Commissioner's decision should be affirmed and the case dismissed with prejudice.

## BACKGROUND

Plaintiff was born on February 8, 1960, and was 47 years old on her alleged disability onset date of October 1, 2007. (AR 147.) Plaintiff filed an application for Supplemental Security Income benefits on October 31, 2007. (AR 11, 147-51.) Plaintiff claims she is disabled due to lupus, problems in her neck and spine, chronic obstructive pulmonary disorder, "extreme chronic pain," and other impairments. (AR 164.) Plaintiff has not engaged in substantial gainful activity since at least October 31, 2007. (AR 13, 164.)

Plaintiff's claim was denied initially on March 21, 2008 (AR 63-67), and on reconsideration on August 29, 2008. (AR 72-77.) Plaintiff filed a timely request for hearing on October 13, 2008. (AR 79.) Plaintiff appeared with counsel and testified at a hearing held on August 11, 2009, before Administrative Law Judge ("ALJ") Helen E. Hesse. (AR 23-46.) The ALJ issued a decision denying benefits on August 19, 2009. (AR 8-21.) On September 15, 2009, Plaintiff filed a timely request for review of the ALJ's decision. (AR 6.) The Appeals Council denied review on September 22, 2009. (AR 1-3.) Plaintiff then commenced the present action.

## DISPUTED ISSUES

As reflected in the Joint Stipulation, there are six disputed issues:

1. Whether the ALJ properly considered an examining physician's opinion;
2. Whether the ALJ properly evaluated a treating physician's opinion;
3. Whether the ALJ properly considered the severity of Plaintiff's fibromyalgia;
4. Whether the ALJ properly assessed Plaintiff's residual functional capacity;
5. Whether the ALJ posed a complete hypothetical question to the vocational expert; and
6. Whether the ALJ properly considered lay witness statements.

(JS at 3.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the ALJ's decision to determine whether the ALJ's findings are supported by substantial evidence and free of legal error. Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996); see also DeLorme v. Sullivan, 924 F.2d 841, 846 (9th Cir. 1991) (ALJ's disability determination must be supported by substantial evidence and based on the proper legal standards).

Substantial evidence means "'more than a mere scintilla,' but less than a preponderance." Saelee v. Chater, 94 F.3d 520, 521-22 (9th Cir. 1996) (quoting Richardson v. Perales, 402 U.S. 389, 401 (1971)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson, 402 U.S. at 401 (internal quotation marks and citation omitted).

This Court must review the record as a whole and consider adverse as well as supporting evidence. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. Morgan v. Comm'r of the Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins, 466 F.3d at 882 (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)); see also Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007).

**THE SEQUENTIAL EVALUATION**

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or . . . can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d) (1)(A), 1382c(a)(3)(A). The Commissioner has established a five-step sequential process to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920.

The first step is to determine whether the claimant is presently engaging in substantial gainful activity. Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). If the claimant is engaging in substantial gainful activity, disability benefits will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987). An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. Second, the ALJ must determine whether the claimant has a severe impairment or combination of impairments. Parra, 481 F.3d at 746. Third, the ALJ must determine whether the impairment is listed, or equivalent to an impairment listed, in Appendix I of the regulations. Id. If the impediment meets or equals one of the listed impairments, the claimant is presumptively disabled. Bowen v. Yuckert, 482 U.S. at 141. Fourth, the ALJ must determine whether the impairment prevents the claimant from doing past relevant work. Pinto v. Massanari, 249 F.3d 840, 844-45 (9th Cir. 2001). Before making the step four determination, the ALJ first must determine the claimant's residual functional capacity ("RFC").[1] 20 C.F.R. § 416.920(e). The RFC must account for all of the claimant's impairments, including those that are not severe. 20 C.F.R. §§ 416.920(e), 416.945(a)(2); Social Security Ruling ("SSR") 96-8p. If the claimant cannot perform his or her past relevant work or has no past relevant work, the ALJ proceeds to the fifth step and must determine whether the impairment prevents the claimant from performing any other substantial gainful activity. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

The claimant bears the burden of proving steps one through four, consistent with the general rule that at all times the burden is on the claimant to establish his or her entitlement to benefits. Parra, 481 F.3d at 746. Once this prima facie case is established by the claimant, the burden shifts to the Commissioner to show that the claimant may perform other gainful activity. Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006). To support a finding that a claimant is not disabled at step five, the Commissioner must provide evidence

---

[1] Residual functional capacity ("RFC") is what one "can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).

demonstrating that other work exists in significant numbers in the national economy that the claimant can do, given his or her RFC, age, education, and work experience. 20 C.F.R. § 416.912(g). If the Commissioner cannot meet this burden, then the claimant is disabled and entitled to benefits. Id.

## DISCUSSION

### A. The ALJ's Decision

In this case, the ALJ determined at step one of the sequential evaluation that Plaintiff has not engaged in substantial gainful activity since October 31, 2007, the date of her application. (AR 13.)

At step two, the ALJ determined that Plaintiff has the following severe impairments: disorder of the lumbar spine; disorder of the cervical spine; arthritis of the left shoulder; and chronic obstructive pulmonary disease. (AR 13.) The ALJ found that Plaintiff has the medically determinable mental impairment of panic disorder, but it is non-severe because it does not cause more than a minimal limitation in her ability to perform basic work activities. (Id.) The ALJ also found that Plaintiff's alleged impairments of fibromyalgia and systemic lupus erythematosus were not medically determinable and therefore not severe. (AR 14.) The ALJ relied heavily on the opinion of medical expert Dr. Nafoosi, whose testimony the ALJ found was "consistent with the objective medical evidence of record," in making these determinations. (AR 14-15.)

At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments. (AR 15.)

The ALJ determined that Plaintiff has the RFC to perform light work with the exceptions that Plaintiff could "sit [eight] hours out of an [eight] hour day; stand or walk [six] hours out of an [eight] hour day; she must be able to change positions briefly [one] to [three] minutes every hour; occasionally lift [twenty] pounds, frequently lift [ten] pounds; occasionally climb stairs, bend, balance, kneel, stoop, crouch, or crawl; precluded from climbing ladders, ropes or scaffolds, working at unprotected heights, or around dangerous or fast moving

machinery; precluded from concentrated exposure to dusts, fumes, gases, chemical[s], or sudden severe temperature changes; and no more than occasional work above shoulder level with both upper extremities." (AR 16.) In reaching this determination, the ALJ gave no weight to the opinion of Plaintiff's treating physician, Dr. Jenny Wang, and found that Plaintiff's credibility was greatly diminished. (AR 16-19.) Instead, the ALJ gave "greatest weight to the opinions of Dr. Nafoosi." (AR 17.)

At step four, the ALJ determined that Plaintiff could not perform her past relevant work as a fire equipment inspector, security guard, or veterinary technician. (AR 19.)

At step five, the ALJ relied on the testimony of a vocational expert in determining that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, specifically mail clerk, office helper, and arcade attendant. (AR 19-20.)

**B. The ALJ Properly Evaluated the Opinions of Dr. Siambanes and Dr. Wang.**

Plaintiff contends that the ALJ did not properly evaluate the opinions of an examining physician, Dr. David Siambanes, and a treating physician, Dr. Wang. (JS at 3-5, 7-12, 17-18, 22-24.) The Court disagrees.

**1. Relevant Law**

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians: (1) those who treat the claimant (treating physicians); (2) those who examine but do not treat the claimant (examining physicians); and (3) those who neither examine nor treat the claimant (non-examining, or consulting, physicians). See 20 C.F.R. §§ 404.1527, 416.927; see also Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995). In general, an ALJ must accord special weight to a treating physician's opinion because a treating physician "is employed to cure and has a greater opportunity to know and observe the patient as an individual." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted). If a treating source's opinion on the issues of the nature and severity of a claimant's impairments is well-supported by medically acceptable clinical and laboratory

diagnostic techniques, and is not inconsistent with other substantial evidence in the case record, the ALJ must give it "controlling weight." 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Where a treating doctor's opinion is not contradicted by another doctor, it may be rejected only for "clear and convincing" reasons. Lester, 81 F.3d at 830. However, if the treating physician's opinion is contradicted by another doctor, such as an examining physician, the ALJ may reject the treating physician's opinion by providing specific, legitimate reasons, supported by substantial evidence in the record. Lester, 81 F.3d at 830-31; see also Orn, 495 F.3d at 632; Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002). Where a treating physician's opinion is contradicted by an examining professional's opinion, the Commissioner may resolve the conflict by relying on the examining physician's opinion if the examining physician's opinion is supported by different, independent clinical findings. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995); Orn, 495 F.3d at 632. Similarly, to reject an uncontradicted opinion of an examining physician, an ALJ must provide clear and convincing reasons. Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005). If an examining physician's opinion is contradicted by another physician's opinion, an ALJ must provide specific and legitimate reasons to reject it. Id. However, "[t]he opinion of a non-examining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician"; such an opinion may serve as substantial evidence only when it is consistent with and supported by other independent evidence in the record. Lester, 81 F.3d at 830-31; Morgan, 169 F.3d at 600.

**2. Dr. Siambanes's Opinion**

Dr. Siambanes performed an "Agreed Medical Re-evaluation" as part of Plaintiff's Workers' Compensation case on September 27, 2006. (AR 301-03.) Among other things, Dr. Siambanes wrote that "because of [Plaintiff's] increased discomfort and pain an assistive ambulatory device such as a wheelchair and/or a walker would be appropriate." (AR 302.) The ALJ did not mention Dr. Siambanes's opinion in her written decision, and she did not

include in Plaintiff's RFC the requirement for an assistive ambulatory device. (AR 11-21.) Plaintiff argues that the ALJ's failure to provide legally sufficient reasons to reject Dr. Siambanes's opinion requires reversal. (JS at 3-5, 7-8.)

The Court finds that the ALJ did not err in failing to discuss Dr. Siambanes's opinion explicitly. An ALJ is required to provide an explanation only when she rejects "significant probative evidence." Vincent v. Heckler, 739 F.2d 1393, 1394-95 (9th Cir. 1984). Plaintiff has not demonstrated that Dr. Siambanes's findings constitute significant or probative evidence. First, Dr. Siambanes appeared to be unable to perform a comprehensive examination of Plaintiff. He noted that "[i]t was difficult to perform a complete examination . . . due to [Plaintiff's] noncompliance as she stated that she would have increased symptoms with any activity. She would not attempt to stand or take steps as she feared instability." (AR 302.) Dr. Siambanes's resulting opinion is brief, and it does not explain what clinical findings he relied upon in forming his opinion. (See AR 301-03.) In fact, Dr. Siambanes later reviewed electrodiagnostic study and magnetic resonance imaging results and wrote that the additional testing "does not validate any motor loss or pathology to validate [Plaintiff's] presenting symptoms." (AR 337-38.) An ALJ need not accept a medical opinion "that is conclusory and brief and unsupported by clinical findings." Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). Next, it is not clear that Dr. Siambanes believed Plaintiff actually required an assistive ambulatory device. He wrote that such a device "would be appropriate," but he "strongly recommended that [Plaintiff] avoid use of the wheelchair more than periodically to avoid further deconditioning." (AR 302.) He also stated that "it would behoove [Plaintiff] to stay as active as possible to avoid further deconditioning and loss of quality of life." (Id.) He summarized that Plaintiff "may" need an assistive ambulatory device. (Id.) Thus, Dr. Siambanes did not opine unequivocally that Plaintiff required an assistive ambulatory device. In addition, Dr. Siambanes's evaluation was performed on September 27, 2006, approximately one year prior to Plaintiff's alleged disability onset date of October 1,

2007. Evidence prior to the relevant time period is properly rejected. See Burkhart v. Bowen, 856 F.2d 1335, 1339 n.1 (9th Cir. 1988).

Even if the ALJ erred in failing to discuss Dr. Siambanes's opinion, the Court concludes that the error was harmless. Dr. Siambanes noted that his findings were "related to a combination of increased subjective discomfort and pain and symptom magnification" (AR 302), and later wrote that additional testing did "not validate any motor loss or pathology to validate [Plaintiff's] presenting symptoms." (AR 338.) The ALJ unambiguously discounted the credibility of Plaintiff's subjective symptom testimony, concluding that Plaintiff's "inconsistencies and general lack of support for her allegations in the medical evidence of record diminish her credibility greatly." (AR 19.) Plaintiff does not challenge the ALJ's adverse credibility determination. Therefore, the ALJ was entitled to give little weight to Dr. Siambanes opinion, as it was based largely on Plaintiff's subjective symptoms. See Tonapetyan, 242 F.3d at 1149 ("Because the present record supports the ALJ in discounting [the claimant's] credibility . . . , he was free to disregard [an examining physician's] opinion, which was premised on her subjective complaints.").

A remand or reversal on this basis is not warranted.

**3. Dr. Wang's Opinion**

Dr. Wang began treating Plaintiff in November 2008. (AR 901.) On December 26, 2008, she wrote a letter stating that Plaintiff "has not been able to work" and "has severe symptoms including pain, fatigue, and sleep disturbances due to her chronic medical conditions of fibromyalgia, lupus, and chronic pain syndrome." (Id.) On April 24, 2009, Dr. Wang completed a "Fibromyalgia Disease Residual Functional Capacity Questionnaire," in which she stated, among other things: Plaintiff meets the American Rheumatological criteria for fibromyalgia; Plaintiff's symptoms include multiple tender points, nonrestorative sleep, chronic fatigue, morning stiffness, muscle weakness, irritable bowel syndrome, premenstrual syndrome, numbness and tingling, Sicca symptoms, Raynaud's phenomenon, breathlessness, anxiety, panic attacks, depression, subjective swelling, and frequent, severe

headaches; Plaintiff's medications can cause drowsiness and difficulty concentrating; Plaintiff's symptoms constantly interfere with her attention and concentration; Plaintiff is severely limited in her ability to deal with work stress; Plaintiff could sit or stand for no more than five minutes at one time; Plaintiff could sit or stand/walk less than one hour total in an eight hour working day; Plaintiff needs to lie down for about fifty-five minutes per hour; Plaintiff would need to take unscheduled breaks from work "99% of the time" "likely for a few hours at a time;" Plaintiff's legs need to be elevated above ninety degrees 99% of the time; Plaintiff cannot perform any grasping, turning, twisting, fine manipulations, or reaching with either extremity; Plaintiff cannot bend or twist; and Plaintiff would likely be absent from work more than three times per month. (AR 1713-18.) Dr. Wang also completed physical and mental capacity questionnaires in August 2009, reporting similar severe functional limitations. (AR 1793-97.) The ALJ rejected Dr. Wang's opinion. (AR 17-18.)

Because Dr. Wang's opinion was contradicted by other physicians, the ALJ was required to provide specific and legitimate reasons to reject it. The ALJ did so. First, the ALJ noted that Dr. Wang's opinion of Plaintiff's limitations was not supported by her own treatment notes. (AR 17-18.) A review of the record reveals that none of Dr. Wang's treatment notes suggest that Plaintiff is as incapacitated as she wrote in the questionnaires. (See AR 1726-48, 1755-59.) On the same day that she completed the fibromyalgia questionnaire, Dr. Wang performed a physical examination and noted that Plaintiff "feels okay," "[i]s not experiencing shortness of breath," is "well-developed, well-nourished, and in no distress," and "exhibits no edema." (AR 1726-28.) Dr. Wang examined Plaintiff a week earlier and wrote that Plaintiff "has normal motor skills, normal sensation, [and] normal strength," "displays no weakness, no atrophy . . . , normal stance and normal speech," "exhibits normal muscle tone," has "a normal Tandem Gait Test," and has normal gait and coordination. (AR 1732.) In November 2008, Dr. Wang wrote that Plaintiff's fibromyalgia was stable and well controlled, and that Plaintiff experienced no medication side effects. (AR 1756.) The ALJ properly relied on the discrepancies between Dr. Wang's treatment notes

and her statements about Plaintiff's functional limitations as a specific and legitimate reason to reject her opinion. See Bayliss, 427 F.3d at 1216.

Next, the ALJ observed that Dr. Wang's opinions were contradicted by Plaintiff's own testimony and behavior at the hearing. The ALJ noted that Plaintiff testified she was wheelchair-bound, and observed that Plaintiff was seated for the duration of the hearing, in contrast to Dr. Wang's opinion that Plaintiff could remain seated for only five minutes. (AR 17-18.) The ALJ also noted that Plaintiff "testified at the hearing that she has no side effects from her medications, which directly contradicts the statement of Dr. Wang that her medication causes her concentration problems." (AR 18; see AR 38.) The ALJ's observation that Plaintiff's testimony and behavior contradicted Dr. Wang's opinion constitutes a specific and legitimate reason to discount the opinion. See Magallanes, 881 F.2d at 751-55 (upholding ALJ's rejection of treating physician's opinion where claimant's own testimony contradicted physician's opinion).

A reversal or remand is not warranted on this basis.

**C. The ALJ Properly Determined that Plaintiff's Alleged Impairment of Fibromyalgia Is Non-Severe.**

Plaintiff argues that the ALJ committed reversible error at step two of the sequential evaluation by failing to list Plaintiff's alleged fibromyalgia as a severe impairment. (JS at 18-22.) The Court disagrees.

At step two of the sequential inquiry, the ALJ determines whether the claimant has a medically severe impairment or combination of impairments. Bowen v. Yuckert, 482 U.S. at 140-41. An impairment is not severe if it does not significantly limit the claimant's ability to work. Smolen, 80 F.3d at 1290. The ALJ, however, must consider the combined effect of all the claimant's impairments on his ability to function, regardless of whether each alone was sufficiently severe. Id. Also, the ALJ must consider the claimant's subjective symptoms in determining severity. Id.

The step two determination is a *de minimis* screening device to dispose of groundless claims. Bowen, 482 U.S. at 153-54. An impairment or combination of impairments can be

found nonsevere only if the evidence establishes a slight abnormality that has no more than a minimal effect on an individual's ability to work. Smolen, 80 F.3d at 1290; SSR 85-28; Yuckert v. Bowen, 841 F.2d 303, 306 (9th Cir. 1988) (citing SSR 85-28).

In this case, the ALJ found, consistent with the medical expert's testimony, that Plaintiff's fibromyalgia was not medically determinable and therefore not a severe impairment. (AR 14.) Plaintiff points out that Dr. Wang diagnosed Plaintiff with fibromyalgia and notes other references to fibromyalgia in the medical record. (JS at 18-22.) Although Dr. Wang wrote that Plaintiff met the diagnostic criteria for fibromyalgia, the ALJ properly rejected Dr. Wang's opinion, as explained above. The ALJ also noted that Dr. Wang is not a rheumatologist and that Plaintiff has refused to see a rheumatologist (AR 15, 730) as additional reasons to discount Dr. Wang's diagnosis of fibromyalgia. See Benecke v. Barnhart, 379 F.3d 587, 594 n.4 (9th Cir. 2004) (noting that "[r]heumatology is the relevant specialty for fibromyalgia," which "is poorly understood within much of the medical community").

Moreover, the ALJ's unchallenged rejection of the credibility of Plaintiff's subjective symptom testimony carries particular weight with respect to her alleged impairment of fibromyalgia. "Fibromyalgia's cause is unknown, there is no cure, and it is poorly-understood within much of the medical community." Benecke, 379 F.3d at 590. Although the American College of Rheumatology issued a set of diagnostic criteria, there are no laboratory tests to confirm the diagnosis, and it is legal error for an ALJ to require objective evidence of fibromyalgia. Id. at 590, 594. Instead, "[t]he disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." Id. at 590. As noted above, Plaintiff does not challenge the ALJ's rejection of the credibility of her subjective symptom testimony. The ALJ specifically noted that Plaintiff exhibited "an exaggerated pain response" at an examination

by a pain management consultant. (AR 18.) The ALJ's rejection of Plaintiff's pain testimony supports his determination that Plaintiff did not have the severe impairment of fibromyalgia.[2]

A reversal or remand is not warranted on this basis.

**D. The ALJ Posed a Complete Hypothetical to the Vocational Expert.**

Plaintiff next argues that the ALJ's hypothetical to the vocational expert was incomplete because it did not include certain functional limitations contained in Dr. Siambanes's and Dr. Wang's opinions. (JS at 25-27.) Consistent with her RFC determination, the ALJ asked the vocational expert to consider a hypothetical individual of Plaintiff's age, experience, and education who "can sit eight hours out of an eight-hour day; stand or walk six hours out of an eight-hour day. She must be able to change position briefly, one to three minutes, every hour. She can occasionally lift [twenty] pounds, frequently lift ten pounds. She can occasionally climb stairs, bend, balance, stoop, kneel, crouch, or crawl. She's precluded from climbing ladders, ropes or scaffolding, working at unprotected heights or around dangerous or fast-moving machinery. She's also precluded from concentrated exposure to dust, fumes, gases, chemicals, or sudden severe temperature changes, and she can do . . . no more than occasional work above shoulder level with both upper extremities." (AR 42-43; see AR 15-16.)

An ALJ may rely on testimony a vocational expert gives in response to a hypothetical that contains "all of the limitations that the ALJ found credible and supported by substantial evidence in the record." Bayliss, 427 F.3d at 1217-18. The ALJ is not required to include limitations that are not in her findings. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001); Osenbrook v. Apfel, 240 F.3d 1157, 1165 (9th Cir. 2001).

---

[2] Plaintiff also points out that another treating physician, Dr. Ronald Zhang, wrote that Plaintiff met the diagnostic criteria for fibromyalgia. (JS at 19-20 (citing AR 869).) The ALJ did not mention Dr. Zhang's opinion. (AR 11-21.) The Court concludes that any error in failing to discuss Dr. Zhang's opinion was harmless. In light of the ALJ's proper rejections of Dr. Wang's opinion and Plaintiff's subjective symptom testimony, the Court concludes that "the ALJ's error, if any indeed existed, was inconsequential to the ultimate nondisability determination." See Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1055 (9th Cir. 2006).

In this case, the ALJ properly rejected Dr. Siambanes's and Dr. Wang's opinions, as discussed above. The ALJ therefore was not required to include Dr. Siambanes's and Dr. Wang's limitations in her hypothetical to the vocational expert. There was no error.

**E. The ALJ's Failure to Discuss Lay Witness Statements Does Not Require Reversal.**

Finally, Plaintiff contends that the ALJ's failure to discuss lay witness statements of her "friend/caregiver," John A. Magnone, was improper and merits reversal. (JS at 27-31.) The Court disagrees.

Mr. Magnone completed a Functional Report Adult - Third Party form dated December 16, 2007, and wrote a May 16, 2009, letter discussing Plaintiff's condition. (AR 186-93, 1792.) Mr. Magnone wrote, among other things, that Plaintiff: spends her days watching television; could do "everything" before "but now she is disabled;" requires assistance with all aspects of personal care; has difficulty handling money because she "gets confused;" requires assistive ambulatory devices "all the time;" cannot handle stress or changes in routine; is "confined to home or bed except for the absolute necessary trips for medical care and or legal appearances;" has "chronic pain, difficulty with concentration and maintaining balance;" and "cannot sit for more than a short period of time without numbness and weakness in her legs which eventually leads to excruciating pain." (Id.) In sum, Mr. Magnone believed that Plaintiff "is truly permanently disabled." (AR 1792.)

An ALJ is often obligated to discuss and assess third party testimony. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1056 (9th Cir. 2006) ("[W]here the ALJ's error lies in a failure to properly discuss competent lay testimony favorable to the claimant, a reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination."). The same rule does not necessarily apply to all written evidence provided by third parties, however, and "the ALJ does not need to discuss every piece of evidence." Howard *ex rel.* Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (internal quotations omitted). Here, Mr. Magnone's observations were consistent with Plaintiff's own allegations

about her subjective limitations. (Compare AR 186-93, 1792 with AR 38-40, 178-85.) Because the ALJ properly rejected Plaintiff's similar testimony – a finding Plaintiff does not challenge – "it follows that the ALJ also gave germane reasons" for rejecting Mr. Magnone's statements. See Valentine v. Comm'r, Soc. Sec. Admin., 574 F.3d 685, 694 (9th Cir. 2009). Thus, even if the ALJ erred by failing to mention Mr. Magnone's statements, the error was harmless. A reversal or remand is not warranted on this basis.

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED and that this action is dismissed with prejudice.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED: January 18, 2011

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE